

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL RAFEAL BERKLEY,<br><br>*Defendant*. | Case No. 3:22CR101<br><br>18 U.S.C. § 1349<br>Conspiracy to Commit Bank Fraud<br>(Count 1)<br><br>18 U.S.C. §§ 1344 and 2<br>Bank Fraud<br>(Counts 2 – 4)<br><br>18 U.S.C. §§ 1028A(a)(1) and 2<br>Aggravated Identity Theft<br>(Counts 5 – 7)<br><br>18 U.S.C. §§ 1029(a)(5) and 2<br>Illegal Transactions with an Access Device<br>(Count 8)<br><br>Forfeiture Allegation |

## INDICTMENT

July 2022 Term – At Richmond, Virginia

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT ONE
(Conspiracy to Commit Bank Fraud)

1. From in or about 2019, through in or about March 2020, the exact dates being unknown, in the Eastern District of Virginia and elsewhere, the defendant, MICHAEL RAFEAL BERKLEY, knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to the grand jury to commit an offense contained with Chapter 63 of Title 18 of the United States Code, to wit: Bank fraud, that is, to knowingly execute and attempt

to execute a scheme and artifice to defraud and to obtain money, funds, credits, assets, and securities owned by and under the custody and control of a financial institution as defined under Title 18, United States Code, Section 20, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States, Code, Section 1344.

## Object of the Scheme and Artifice to Defraud

2. The object of the scheme and artifice to defraud was for BERKLEY and his co-conspirators to fraudulently obtain funds to which they were not entitled by negotiating counterfeit checks at banks.

## The Ways, Manner, and Means of the Conspiracy

3. The ways, manner, and means by which BERKLEY and his co-conspirators sought to accomplish the conspiracy operated in substance as follows:

   a. BERKLEY and his co-conspirators engaged in a practice known colloquially as "card-cracking," a four-prong process that typically proceeds as follows:

      i. conspirators obtain the bank account information of a frequently complicit third party (to include that bank account holder's Automated Teller Machine (ATM) card and accompanying Personal Identification Number (PIN)), usually on the understanding that the account holder will receive a future cash payment in exchange for these materials;

      ii. conspirators obtain the personal information and bank account information of a victim (to include the victim's bank account number and routing number) – typically through direct mail theft, or the purchase of such previously-stolen information offered for sale on various social media and online platforms;

    iii. conspirators create a counterfeit check (either utilizing check-printing software, or through physical alteration of pre-existing checks) that purports to have been drafted by the victim on the victim's actual checking account, and made payable to the complicit third party;

    iv. conspirators, using the complicit third party's ATM card and accompanying PIN, deposit the counterfeit check at an ATM machine and then—following the bank's acceptance of that counterfeit check, and crediting of the complicit third party's account—withdraw the cash that the bank makes available.

b. BERKLEY obtained the personal and bank account information of numerous individuals, as well as the addresses and bank account information of dozens of businesses, without those individuals' or businesses' knowledge or consent. The personal and banking information of other individuals that BERKLEY and his co-conspirators possessed and utilized during the course of the conspiracy constituted means of identification of those individuals, as that term is defined at Title 18, United States Code, Section 1028(d)(7). Those individuals whose means of identification BERKLEY and his co-conspirators knowingly possessed, transferred, and used during the course of the bank fraud conspiracy included residents of numerous states, to include C.G., a Maryland resident; D.B., a Maryland resident; E.G., a Florida resident; and A.B., a Georgia resident.

c. BERKLEY, using the alias "Xoe Chung," registered an online profile at the website "onlinecheckwriter.com." That website allows members to create checks by inputting both the names, addresses, and bank account information of

the desired payor, and the names and addresses of the desired payee. To facilitate the creation of recurrent check drafts, the website allows members to store copies of previously created checks and previously-utilized payor information (that is to say, the names, addresses, and bank account information of the individual or business entity payor).

d. BERKLEY and his co-conspirators recruited and/or located numerous third parties willing to provide the conspirators with their ATM cards and PINs. The names, ATM cards, and PINs that these individuals provided to BERKLEY and his co-conspirators constituted means of identification of those persons, as that term is defined at Title 18, United States Code, Section 1028(d)(7).

e. BERKLEY and his co-conspirators thereafter utilized the "Xoe Chung" profile on onlinecheckwriter.com to create hundreds of knowingly and deliberately counterfeit checks made out to these various complicit third-party payees, inserting as the payor entity on these counterfeit checks the stolen bank account information of more than 80 individuals and businesses.

f. BERKLEY subsequently deposited numerous of these checks at financial institutions located within the Eastern District of Virginia, using the ATM card and PINs of the fraudulent third-party payees to withdraw the funds the financial institutions credited to the payee's account following the deposit of the counterfeit check(s).

g. One of the banks targeted in this fashion by BERKLEY and his co-conspirators was Apple Federal Credit Union, a credit union with accounts insured by the National Credit Union Share Insurance Fund, and as such, a financial institution

as that term is defined at Section 20 of Title 18, United States Code. BERKLEY and his co-conspirators thereafter used those fraudulently-obtained funds for their own purposes.

4. From in or about 2019 through at least in or about March 2020, in the Eastern District of Virginia and elsewhere, the defendant and his co-conspirators, in executing and attempting to execute the aforementioned scheme to defraud, created and produced false and fraudulent checks that amounted to more than $1,280,000 in face value, for the purpose of negotiating those fraudulent financial instruments at financial institutions located within the Eastern District of Virginia and elsewhere.

## COUNTS 2 – 4
(Bank Fraud)

5. The allegations in paragraphs 1 through 4 of this Indictment are re-alleged and incorporated as though set forth in full here.

6. From in or about 2019, through in or about March 2020, in the Eastern District of Virginia and elsewhere, the defendant, MICHAEL RAFEAL BERKLEY, aided and abetted by others known and unknown to the grand jury, did knowingly, and with the intent to defraud, execute and attempt to execute a scheme and artifice to defraud and to obtain money and property under the custody of financial institutions (as that term is defined in Title 18, United States Code, Section 20) located within the Eastern District of Virginia, to include Apple Federal Credit Union, by means of materially false and fraudulent pretenses, representations, and promises.

7. For the purpose of executing and attempting to execute the above-described scheme and artifice, the defendant, MICHAEL RAFEAL BERKLEY, aided and abetted by others known and unknown to the grand jury, engaged in the following transactions, each transaction constituting a separate count of this Indictment:

| Count | Description of Transaction |
|---|---|
| 2 | On or about February 4, 2020, at approximately 10:47 a.m., MICHAEL RAFEAL BERKLEY deposited two fraudulent checks, with a combined face value of $4,797.65 and drafted on the account of a victim business entity, into the bank account of C.B., using an ATM at the Apple Federal Credit Union ("AFCU") branch located at 1226 W. Broad Street, Falls Church, Virginia, within the Eastern District of Virginia. On or about that same day, utilizing C.B.'s ATM card and accompanying PIN, BERKLEY withdrew $500 from C.B.'s AFCU bank account, which funds AFCU had credited to C.B.'s account as a result of BERKLEY's deposit of the counterfeit checks. |
| 3 | On or about February 5, 2020, at approximately 11:34 a.m., MICHAEL RAFEAL BERKLEY deposited two fraudulent checks, with a combined face value of $4,998.65 and drafted on the account of a victim business entity, into the bank account of C.B., using an ATM at the Apple Federal Credit Union ("AFCU") branch located at 1226 W. Broad Street, Falls Church, Virginia, within the Eastern District of Virginia. On or about that same day, utilizing C.B.'s ATM card and accompanying PIN, BERKLEY withdrew $500 from C.B.'s AFCU bank account, which funds AFCU had credited to C.B.'s account as a result of BERKLEY's deposit of the counterfeit checks. |
| 4 | On or about February 14, 2020, at approximately 10:12 a.m., MICHAEL RAFEAL BERKLEY deposited two fraudulent checks, with a combined face value of $4,998.46 and drafted on the account of a victim religious institution, into the bank account of A.J., using an ATM at the Apple Federal Credit Union ("AFCU") branch located at 1226 W. Broad Street, Falls Church, Virginia, within the Eastern District of Virginia. On or about that same day, utilizing A.J.'s ATM card and accompanying PIN, BERKLEY withdrew a total of $995.99 from A.J.'s AFCU bank account, which funds AFCU had credited to A.J.'s account as a result of BERKLEY's deposit of the counterfeit checks. |

(In violation of Title 18, United States Code, Sections 1344 and 2.)

## COUNTS 5 – 7
(Aggravated Identity Theft)

8. The allegations in paragraphs 1 through 7 of this Indictment are re-alleged and incorporated as though set forth in full here.

9. On or about the dates set forth below, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, the defendant, aided and abetted by others known and unknown to the grand jury, did knowingly and unlawfully possess and use, without

lawful authority, means of identification of other persons (as set forth in more detail below), knowing that the means of identification belonged to another actual person, during and in relation to a felony violation contained in Chapter 63 of Title 18, United States Code (that is, Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349; and Bank Fraud, in violation of 18 U.S.C. § 1344).

| Count | Date | Means of Identification | Felony Violation |
|---|---|---|---|
| 5 | 2/4/2020 | The name, PIN, and ATM card (an access device as that term is defined at Title 18, United States Code, Section 1029(e)) of C.B. | 18 U.S.C. §§ 1349 and 1344 |
| 6 | 2/14/2020 | The name, PIN, and ATM card (an access device as that term is defined at Title 18, United States Code, Section 1029(e)) of A.J. | 18 U.S.C. §§ 1349 and 1344 |
| 7 | 2/10/2020 | The name, address, and forged signature of C.G., as well as C.G.'s bank account and bank account routing numbers. | 18 U.S.C. § 1349 |

(In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2).

## COUNT 8
(Illegal Transactions with an Access Device)

From on or about November 1, 2019, through on or about March 31, 2020, in the Eastern District of Virginia and elsewhere, the defendant, MICHAEL RAFEAL BERKLEY, knowingly and with the intent to defraud, and aided and abetted by others known and unknown to the grand jury, effected transactions with access devices, as that term is defined at Section 1029(e)(1) of Title 18, that is, financial institution debit cards issued to other persons, to receive payment of an aggregate value of more than $1,000, said conduct affecting interstate and foreign commerce, in that the defendant fraudulently obtained funds belonging to or under the custody of federally insured financial institutions.

(In violation of Title 18, United States Code, Sections 1029(a)(5) and 2).

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendant is notified that as to Counts 1 through 4 and Count 8 of this Indictment, the defendant, upon conviction of the any of the offenses, shall forfeit to the United States any property which constitutes, or is derived from, proceeds he obtained directly or indirectly, as the result of such offense.

The defendant is further notified as to Count 8 of this Indictment, the defendant, upon conviction of the offense, shall also forfeit to the United States any personal property used or intended to be used to commit the offense.

If the property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(All in accordance with Title 18, United States Code, Sections 982(a)(2)(A) and (B), 1029(c)(1)(C) and Title 21, United States Code, Section 853(p)).

A TRUE BILL:

FOREPERSON

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Thomas A. Garnett
Assistant United States Attorney

_____
Kenneth R. Simon, Jr.
Assistant United States Attorney