IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.  Criminal Case No. 3:22cr101

**MICHAEL RAFEAL BERKLEY,**

**Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Michael Rafeal Berkley's Motion to Compel Discovery ("Motion to Compel"), (ECF No. 72), as well as Berkley's subsequently filed Motion to Reinstate Motion to Compel and to Issue Subpoenas to Online Check Writer ("OCW") and Virginia Union Police Department ("Motion to Reinstate Motion to Compel"), (ECF No. 80) (collectively, with the Motion to Compel, the "Motions"). The United States filed a response to the Motions, (ECF No. 104), and Berkley replied, (ECF No. 108). These matters are ripe for disposition.[1]  For the reasons that follow, the Court will deny Berkley's Motion to Compel and Motion to Reinstate Motion to Compel. (ECF Nos. 72, 80.)

---

[1] Berkley also has filed an Addendum to Motion to Compel Discovery (the "Addendum"), (ECF. No. 88), and a Motion to Dismiss Indictment and/or Issue Sanctions, (ECF. 93). In those filings, Berkely seeks additional discovery because the United States turned over what he says are incomplete records regarding communication between OCW and Postal Inspector Stefan Hinds regarding the Xoe Chung profile. (ECF No. 88, at 1–2.) In the Addendum, as elsewhere, Berkley charges that while the United States has turned over numerous pages of repetitive questions by Postal Inspector Hinds, it included only two responses by the OCW representative as well as emails that lack attachments. This is representative of an ongoing factual dispute between the parties that the Court will address by separate opinion.

# I. Background

## A. Procedural Background

On July 14, 2022, a grand jury returned an eight-count indictment against Berkley, charging him with Conspiracy to Commit Bank Fraud (Count 1), Bank Fraud (Counts 2–4), Aggravated Identity Theft (Counts 5–7), and Illegal Transactions with an Access Device (Count 8). (ECF No. 4.) On July 20, 2022, Berkley was arrested, and Darius Holloway, a Federal Public Defender ("FPD"), was appointed as counsel. (ECF Nos. 7, 9.) Following an arraignment and detention hearing before a magistrate judge on July 25, 2022, Berkley was ordered detained pending trial. (ECF Nos. 12, 14.)

On August 3, 2022, the Court entered the parties' Joint Discovery Order (a standard form used in many criminal cases in this district), which, among other things, places specific deadlines on both parties for disclosure or discovery information under Federal Rules of Criminal Procedure 16 and 26. (ECF No. 15.)

The Court entered the parties' jointly submitted Protective Order that same day. (ECF No. 16.) The United States reported that the alleged fraud scheme involved the misappropriation and misuse of dozens of individuals' and business entities' sensitive information, and that the discovery included business and bank records detailing that information and Instagram account records replete with sensitive information ("protected information"). The Protective Order permitted defense counsel to obtain the entirety of the discovery without redactions but strictly prohibited counsel from distributing the protected information to the defendant or other parties without consent of the government, or order of the Court. (ECF No. 16.)

On September 5, 2022, Berkley filed, through his newly retained counsel, Vaughan Jones, a Motion to Substitute Counsel stating he had lost confidence in his ability to work with

FPD Holloway. (ECF 24.) Two days later, the Court granted the Withdrawal Motion and entered an Order substituting Vaugh C. Jones as Berkley's retained counsel of record. (ECF No. 25.)

During a September 19, 2022 status hearing, the Court granted the motion by the United States to continue the trial to January 9-13, 2023. The Court entered an Amended Scheduling Order on September 20, 2019. (ECF No. 29.)

On September 28, 2022, Berkley filed, through counsel, a motion to revoke his detention order which this Court heard as an appeal from the magistrate judge's Order. (ECF No. 29.) In October 2022, Berkley peppered the Court with *pro se* letters and motions involving discovery, and motions to dismiss and to compel. (See ECF. Nos. 32, 33, 36, 37, 38, 39, 40, 41.). The Court entered an order telling Berkley that he could not submit motions on his own when counsel represented him. (ECF No. 43.) Berkley had willingly brought counsel Jones into the case. The Court denied the then-pending motions. (ECF. No. 43.)

While these motions were being docketed, the parties, through counsel, continued to meet to discern an effective discovery disclosure plan given the volume of the material and the extensive sensitive identifying information within it.

On November 10, 2022, Berkley filed, *pro se*, a Motion to Dismiss Lawyer and Proceed *Pro Se*. (ECF No. 44). Berkley represented that he had "reviewed all of [his] discovery with [his] previous lawyer . . . Darius Holloway and am very much prepared to start trial on January 3, 2023." (ECF No. 44, at 1.) He also asserted his speedy trial rights. (ECF No. 44, at 1.)

That same day, Berkley filed, *pro se*, a Motion Requesting Permission to Hybrid Representation, in which he acknowledged that although the United States Supreme Court has held that there is no constitutional right to hybrid representation, it is within a court's discretion

3

to permit it. (ECF No. 45.) Recognizing that he had to show a special need for hybrid representation, Berkley listed several concerns that directly contradicted his assertion that he was prepared for trial. For instance, Berkley stated that the "two visits [he] received from [his] current attorney have been non-contact visits preventing [him] from reviewing [the] discovery which is currently in electronic form." (ECF No. 45, at 2.) He also cited differences between him and his counsel as to trial strategy. He said his lawyer was not filing the motions Berkley wanted him to, and that not "believing you will be successful on a motion is not a substantial enough reason not to file it." (ECF No. 45, at 2.)

On November 15, 2022, attorney Jones filed a motion to withdraw as counsel. (ECF No. 47.) Mr. Jones stated that he had met with Berkley "in person on three occasions and by phone weekly since September." (ECF No. 47, at 1.) Mr. Jones added that

> [w]ithout revealing attorney client privileged strategy communications, Counsel and Mr. Berkley have considered numerous legal and trial strategies. Counsel's defense and review of discovery has been delayed and distracted by requested pursuit investigation and research of requested legal theories and motions. Counsel has declined to pursue certain legal arguments for ethical reasons. In contrast to attorney client communication, and against the advice of Counsel, Mr. [Berkley] has unilaterally contacted this Court on multiple occasions.

(ECF No. 47, at 1–2.) Attorney Jones called Berkley's November 14, 2022 statement to the Court that Berkley had not communicated with Mr. Jones "inaccurate[]." (ECF No. 47, at 2.)

Between November 17, 2022 and December 7, 2022, Berkley delivered eight filings that included an attempt to reopen five motions and add subpoena requests. Among those filings was a November 23, 2022 Motion to Strike or Recall Motion to Permit Hybrid Representation, in which he sought to be allowed to proceed *pro se*. (ECF No. 54.)

The Court conducted a Status Hearing on December 7, 2022. After extensive colloquy that demonstrated a breakdown in communication, the Court held under advisement Mr. Jones's

4

Motion to Withdraw as counsel until standby counsel William J. Dinkin Dinkin could appear. Mr. Dinkin was available on December 15, 2022 so a hearing was scheduled for that day. As of December 7, nearly five months into his federal prosecution, Berkley was to receive a third (standby) lawyer having had a breakdown in communication with both an appointed attorney and a second one he retained.

Two events of note happened between December 7, 2022 and December 15, 2022.[2] First, on December 9, 2022, the United States proffered a proposed discovery plan purporting to protect the personal identifying information in the discovery while providing access to the information to Berkley who is accused of, among other charges, aggravated identity theft of that very information. (ECF No. 63.) Second, also on December 9, 2022, the Court denied Berkley's Motion to Revoke the Magistrate Judge's Detention Order. (ECF No. 64.) The Court will address these issues in turn.

1. **The First Discovery Plan**

In its December 9, 2022 proposed discovery plan, the United States reiterated the discovery that had been provided to counsel up to that date: "the discovery was entirely in electronic format and included (1) nearly 4,000 pages of Bates-stamped materials, (2) numerous Excel spreadsheets, (3) numerous ATM surveillance videos, (4) approximately 34,000 pages of Instagram records, and (5) more than 5,000 'linked media' files contained within the defendant's Instagram account." (ECF No. 63, at 2.) It then proffered a process that the Court later deemed

---

[2] In the meantime, and in order to assure an orderly proceeding, the Court denied Berkley's *pro se* motions as improperly filed because he was then-represented by Mr. Jones. (ECF No. 62, denying ECF Nos. 44, 45, 49, 50, 53, 54, 56, 57, 59, 60.)

unworkable and inadequate.[3] Despite the fact that the United States had conferred with some members of the United States Marshal Service ("USMS"), the Assistant Chief of the USMS for the Eastern District of Virginia, Jason Byham, testified on December 15, 2022, that the Marshals could not participate in such a plan. Byham said that, among other things, the USMS could not become a part of the discovery process in a criminal case, and that he did not have sufficient personnel or space to cover duties such as overseeing Berkley's discovery review in the USMS interview room.

Concerned about the amount of protected material the Government might have to provide Berkley in discovery, the Court ordered the submission of a new discovery plan in compliance with the Protective Order as Berkley proceeded *pro se*. (ECF No. 70.) That same day, the court (1) granted Mr. Jones's motion to withdraw as counsel; (2) permitted Berkley to proceed *pro se*; (3) authorized the parties to present a revised discovery framework; (4) reappointed William J. Dinkin as standby counsel; and (5) continued the trial generally. (ECF No. 70.)

### 2. Berkley's Appeal of the Denial of Bond and its Effect on Establishing a Viable Discovery Plan

On December 21, 2022, Berkley appealed the Court's denial of his motion to revoke the magistrate judge's Detention Order. (ECF No. 73, 64.) Berkley contends that his litigation

---

[3] The United States suggested that: (1) Berkley would be brought to the Robinson-Merhige Courthouse every time any inmate from Northern Neck Regional Jail ("NNRJ") was to appear; (2) the United States Marshal's Office (USMS) would place Berkley in one of its attorney-client interview rooms; (3) in the interview room, Berkley would be proved a laptop (unable to connect with WiFi) housing the entirety of discovery in his case; and (4) Berkley could review the discovery and take notes. (ECF No. 63, at 2–3.) To comply with the Protective Order governing the case, one of two things would follow. First, if available, standby counsel Dinkin would review the notes at the end of the day and any notes that did not include protected material, Berkley would be permitted to take back to NNRJ. If Mr. Dinkin were unavailable, the USMS would "collect the entirety of defendant's notes . . . and place those notes in a sealed envelope" so that Mr. Dinkin would later review and send, via secure scan, all non-pageID notes to Berkley at NNRJ. (ECF No. 63, at 4–5-4.)

should have continued in other respects because his appeal divested this Court only of jurisdiction to decide bond issues. The Court found otherwise.

"Generally, a timely filed notice of appeal transfers jurisdiction of a case to the court of appeals and strips a district court of jurisdiction to rule on any matters involved in the appeal." *Doe v. Public Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). This rule fosters judicial economy and guards against the confusion and inefficiency that would result if two courts simultaneously considered the same issue. *See* 20 James Wm. Moore et al., *Moore's Federal Practice* § 3902.1 (3d ed. 2010). Berkley filed his Motion to Compel Discovery, (ECF No. 72), on the same day he filed his Notice of Appeal, (ECF No. 73). Six days before that, the Court ordered the parties to file a status report regarding a new proposed discovery framework because Berkley would be proceeding *pro se*. (ECF No. 70.) The Court could not rule on a discovery plan or any motions regarding discovery until the United States Court of Appeals for the Fourth Circuit issued its mandate. Any discovery framework meeting the dual purposes of ensuring Berkley's access to discovery and preventing mishandling of the protected information within it would differ dramatically depending upon whether Berkley were detained or released pending trial. As such, these motions were "matters involved in the appeal."[4] *Doe*, 749 at 258. At the time of filings, the Court was not informed of what discovery had been served, and who had access to it.

---

[4] Even if the Court were in error, it would be harmless because the Court is currently considering the motions Berkley has filed *pro se*. Berkley also has been notified that the Court will allow a pretrial opportunity for him to file one consolidated motion. *See* (ECF No. 99 (The court "will allow for one, omnibus motions deadline, that will be in addition to the four motions before the Court. . . . A date certain shall be set for the omnibus motion to be submitted.")) No prejudice exists because the Court is addressing the gravamen of his earlier expressed concerns. But the Court is doing so in a manner that establishes a firm and coordinated record. The Court could not rule on Berkley's motions related to discovery until a discovery framework was in place and Berkley had sufficient opportunity to investigate the documents.

Berkley suggests this procedure violates his speedy trial rights. While the Court sees that Berkley does not waive his right to a speedy trial, the Court first deemed the case complex on August 16, 2022. (ECF No. 19.) On September 19, 2022, the Court reiterated that the case was complex due to the amount of discovery involved and granted the Government's motion for additional time to prepare for trial due to the voluminous discovery. (ECF No. 27.) Further delay has only occurred due to Berkley's own doing; he has twice withdrawn attorneys and has filed at least thirty-eight (38) motions and letters.[5] While represented by counsel, Berkley filed numerous motions on a *pro se* basis, meaning that the Court was confronted with a series of motions it could not address. While Berkley demonstrates some proficiency in pursuing his defense, his miscues as to procedural matters, while understandable for a *pro se* litigant, have impeded the speedy and efficient progress of his case. Much of the delay and confusion in this case lies at Berkley's feet.

The United States Court of Appeals for the Fourth Circuit issued its mandate denying Berkley's appeal of his detention order on March 22, 2023. (ECF No. 91.) Based on the parties' availability, the Court scheduled a status hearing for April 11, 2023. (ECF No. 94.) The Court had been under the impression that, given the nature of charges Berkley faced, the United States was working on a discovery framework through which it could produce redacted discovery for

---

[5] Certain periods of delay are explicitly excluded when computing the time within which the trial of an indicted offense must commence. For instance, any "delay resulting from any interlocutory appeal" such as that filed by Berkley must be excluded. 18 U.S.C. 3161(h)(1)(C). Also, the "delay resulting from any pretrial motion, from the filing of the motion" to the hearing or prompt disposition of the motion also must be excluded. 18 U.S.C. 3161(h)(1)(D).

Berkley's review in addition to full discovery to standby counsel. During the April status hearing, the Government clarified that it could not, logistically, redact the protected material.[6]

During the April hearing, after colloquy, the Court confirmed its finding that Berkley could proceed *pro se* and appointed Mr. Dinkin as standby counsel for discovery purposes. (ECF. No. 97, 99.) Rejecting the interim proffer by the United States, (ECF No. 71), the Court ordered the parties to confer on a revised framework for discovery that could accomplish the dual purposes of ensuring Berkley's ability to access and review the discovery in his case while guarding the protected information within those same materials. (ECF No. 97, 99.)

On May 5, 2023, the Court granted the use of a discovery framework clarifying that standby counsel would *accompany* Berkley when reviewing the electronic information on a WiFi-disabled computer. (ECF No. 106.) Also, Mr. Dinkin would review any notes taken by Berkley for protected information and would leave with the laptop in hand. (ECF No. 106.) The United States now reports that between July 25, 2022, and April 28, 2023, it has completed ten separate discovery productions: first to Berkley's FPD; then to Berkley's retained counsel; and finally, when Berkley proceeded *pro se*, to Berkley's court appointed-standby counsel. (ECF No. 104, at 3.)

**B.   Motions at Issue**

Also during the April 11, 2023 hearing, the Court ordered that, despite their improper filing, the United States should respond to the four *pro se* motions Berkley filed after Mr. Jones withdrew as his attorney. (*See* ECF Nos. 72, 80, 88, and 93.) The Court clarified, however, that no further motions would be entertained until a proper Pretrial Order was in place that allowed

---

[6] The United States memorialized that position in an April 20, 2023 position paper. (ECF No. 101.)

9

for one,[7] omnibus motion for purposes of review. Berkley is not forever prevented from filing motions, but he is ordered to stand down until the hearing on these four motions can be heard and a proper trial, motions procedure, and schedule decided. The Court will hold that hearing on June 2, 2023.

The United States responded to three of Berkley's pending motions, ECF Nos. 72, 80, and 88, in one document, stating that they concern "the same subject matter and seek the same type of relief—that is, orders compelling and/or facilitating the disclosure of discovery." (ECF No. 104.) Berkley replied. (ECF No. 108.)

In the Motions, Berkley asks the Court to compel the United States to disclose certain documents in discovery.[8] The Court construes Berkley's Motions to encompass six (6) requests. In his Motion to Compel, Berkley asks the Court to "compel the Government to disclose all discovery in relation to the search of the [purported co-conspirator's] college dorm room and the seizure of the laptop from the . . . dorm room." (ECF No. 72.) Specifically, he seeks:

1) any and all reports and memoranda leading up to the reason for the search ("Request 1");
2) all search warrants and affidavits in support of said search warrants ("Request 2");
3) identification of all law enforcement and witnesses to the room and laptop search ("Request 3");
4) all reports and identification of the targets of the search ("Request 4"); and
5) the physical laptops seized ("Request 5").

---

[7] The Court will entertain something other than a single omnibus motion. But Berkley's relentless requests and motions have significantly delayed the orderly preparation of his case for trial. The number of motions cannot be unlimited and such motions must follow the federal rules, the local rules of the Eastern District of Virginia, and the Orders governing this case. A date certain for the end of discovery and motions practice will be discerned during the upcoming June 2, 2023 hearing.

[8] In the Motions, Berkley also asks the Court to issue subpoenas. The subpoenas will be addressed by separate *ex parte* Orders.

(ECF No. 72.)[9]

Berkley's sixth request appears in his Addendum to Motion to Compel which asks the Court to order the United States to produce the complete email correspondence between United States Postal Inspector Hinds and Online Check Writer ("Request 6"). (ECF No. 88.) Berkley contends that the Government "turned over an incomplete record of emails to and from representatives of [OCW] which clearly contradicts [the Government's] stance [that they received the Xoe Chung] . . . profile from a private party." (ECF No. 88.)

The Court will consider five (5) of the six (6) requests below. The sixth OCW request and the Addendum to the Motion to Compel addressing the OCW email exchange, (ECF No. 88), pertain directly to Berkley's Motion to Dismiss Indictment and/or Issue Sanctions, (ECF No. 93), and will be assessed by separate opinion.

## II. Legal Standard

Federal Rule of Criminal Procedure 16 states that "the government must provide to the defendant" a list of items prior to trial, including: (1) defendant's oral statements; (2) defendant's written or recorded statements; (3) defendant's prior criminal record; (4) any documents or objects that may be material to the defense, may be used in the Government's case-in-chief, or may belong to the defendant; (5) the results of any examinations and tests that the Government has in its possession or knows exist and that may be material to the defense; and (6) a written summary of potential testimony from expert witnesses. *See* Fed. R. Crim. P. 16(a)(1)(A)–(G).

Pertinent here, Rule 16(a)(1)(E) provides that the United States must provide an item to the defendant if the item is "within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

---

[9] In his Motion to Reinstate Motion to Compel, Berkley urges the Court to consider this previously filed Motion to Compel. (ECF No. 80.)

11

> (ii) the government intends to use the item in its case-in-chief at trial; or[,]
> (iii) the item was obtained from or belongs to the defendant."

Fed. R. Crim. P. 16(a)(1)(E). "'[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). The bottom-line inquiry for the Court, then, is whether the defendant has articulated facts establishing that the sought-after discovery would "actually help[] prove his defense." *Caro*, 597 F.3d at 621.

> However, Rule 16 also limits the scope of disclosure, stating that the:
>
> [R]ule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in [the *Jencks* Act,]18 U.S.C. §3500.

Fed. R. Crim. P. 16(a)(2).

The *Jencks* Act also requires the production of the Government's witnesses' statements after each witness has testified at trial. *See* 18 U.S.C. § 3500(a) ("[N]o statement or report . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."). This prohibition is meant to ensure witness safety, including witnesses who are alleged co-conspirators. *United States v. Beckford*, 962 F. Supp. 780, 787 (E.D. Va. 1997) (citing *Roberts*, 811 F.2d at 259). Thus, "a district court may not order the disclosure of *Jencks* material earlier than provided by statute." *Id.*

12

Additionally, Rule 16 makes clear that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

### III. Analysis

The Court first notes that all decisions herein are issued without prejudice to either side. The record before the Court does not establish with certainty what the United States has turned over to Berkley, nor does it show how much discovery Berkley has been able to review with standby counsel Dinkin.

This is important because, of the five (5) types of information addressed here, the United States indicates that three (3) have been satisfied by what Berkley has in the discovery now available to him.[10] The remaining two (2) requests are procedurally improper because the Federal Rules of Criminal Procedure and statutory authority prohibit their availability to Berkley at this phase of trial.[11]

Accordingly, the Court will deny the five requests from Motion to Compel and the Motion to Reinstate Motion to Compel, without prejudice. (ECF Nos. 72, 80.)

#### A. The Court Will Dismiss Berkley's Request 2, Request 3, and Request 5 Because the Requests Appear to Be Satisfied

The Court will deny Berkley's Request 2 ("all search warrants and affidavits in support of said search warrants"), Request 3 ("identification of all law enforcement and witnesses to the

---

[10] These are Requests 2 ("all search warrants and affidavits in support of said search warrants"); 3 ("identification of all law enforcement and witnesses to the room and laptop search"); and 5 ("the physical laptops seized").

[11] These are Request 1 ("any and all reports and memorandum leading up to the reason for the search" of the Virginia Union University "VUU" dorm) and Request 4 ("all reports and identification of the targets of the search").

13

room and laptop search"), and Request 5 ("the physical laptops seized") because the Requests appear to be satisfied.

The United States contends that, as to Requests 2, 3, and 5, "it has provided to stand-by defense counsel" the documents requested. (ECF No. 104, at 11–12.) In his Reply, Berkley does not address these requests and solely discusses Request 6. (ECF No. 108.) The Court, therefore, infers that under the discovery framework recently set, the materials sought in Requests 2, 3, and 5 have been made available to Berkley.

Accordingly, because the requests appear to be satisfied, the Court denies Berkley's motion to compel with regards to Requests 2, 3, and 5.

**B.     The Court Will Dismiss Berkley's Request 1 and Request 4 Because Disclosure of the Government's Reports and Memoranda Are Prohibited at this Time by the Federal Rules, Statutory Authority, and the Discovery Order Governing this Case**

The Court will first deny Berkley's Request 1 ("any and all reports and memorandum leading up to the reason for the search" of the VUU dorm) and Request 4 ("all reports and identification of the targets of the search") because they are foreclosed by the plain language of Federal Rule of Criminal Procedure 16(a)(2).

Federal Rule of Criminal Procedure 16(a)(2) provides, in pertinent part, "[the r]ule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). Request 1, which asks for "any and all reports and memorandum leading up to the reason for the search," and Request 4, which seeks "all reports and identification of the targets of the search," squarely fall into the prohibition described by the Rule because they are "reports, memoranda, or other internal

14

government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).

Second, the *Jencks* Act separately requires that the Government's witnesses' statements be produced after each witness has testified at trial. See 18 U.S.C. § 3500(a).

Finally, the Agreed Discovery Order in this case speaks to when such material will be exchanged. The United States must provide so-called *Jencks* and *Giglio* information for any witness who will be called to testify no later than five (5) calendar days before trial. (ECF No. 16, at 4.)

The Court hereby ORDERS Berkley to carefully review the standard Agreed Discovery Order used in this district and entered into in this case, because it not only precludes his demands at bar, but it also creates additional time-sensitive discovery obligations on both the prosecution and the defense. *See* (ECF No. 15.)

Federal Rule of Criminal Procedure 16(a)(2), the *Jencks* Act, and the governing Agreed Discovery Order all bar Berkley from receiving the requested information at this procedural juncture. Request 1 and Request 4 will be denied.

## IV. Conclusion

For the foregoing reasons, the Court will deny Berkley's Requests 1, 2, 3, 4, and 5 in both the Motion to Compel and Motion to Reinstate Motion to Compel.[12] (ECF Nos. 72, 80.)

It is SO ORDERED.

Date: 05/31/23  
Richmond, Virginia

/s/ M. Hannah Lauck  
United States District Judge

---

[12] The Court will address Request 6 by separate opinion.