IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.   Criminal Case No. 3:22cr101

**MICHAEL RAFEAL BERKLEY,**

**Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Michael Rafeal Berkley's Motion to Dismiss Indictment and/or Issue Sanctions ("Motion to Dismiss Indictment"), (ECF No. 93), and the related Addendum to Motion to Compel Discovery as to Online Check Writer emails, ("Addendum to Motion to Compel Discovery"), (ECF No. 88) (collectively, with the Motion to Dismiss Indictment, the "Motions"). The United States filed responses, (ECF Nos. 103, 104), and Berkley replied, (ECF No. 107.) This matter is ripe for disposition. For the reasons that follow, the Court will deny, without prejudice, the Motions. The Court will schedule an evidentiary hearing during which a record can be established on which either party can rely for proper follow up motions.

## I. The Briefing

During the flurry of discovery filings brought to the Court, a core factual dispute between the parties has come to light. Berkley requests that the Court "dismiss the indictment and or issue sanctions and suppress any and all evidence and testimony in reference to the [Xoe Chung] profile on the website [Online Check Writer ('OCW')], due to the Government's knowingly false representation to the Defense and the Court on how exactly this profile information was obtained." (ECF No. 93, at 1.) Berkley asserts that the United States has mispresented how "it

acquired information from OCW in an effort to intentionally prevent [Berkley] from legally challenging the admissibility of the [Xoe Chung] profile." (ECF No. 93, at 1–2.)

Berkley contends that the Government's assertion denying acquisition of the Xoe Chung profile via subpoena or search warrant, but rather through voluntary provision by a person he calls "Sammy," who is an OCW fraud department employee, is not true. Berkley alleges that he has "recorded conversations with Sammy from the [OCW] fraud department in which [Sammy] states that the Government's explanation of Sammy turning over the profile is completely false." (ECF No. 93, at 2.) Berkley further asserts that he spoke with OCW Operations Manager, Patricia Aguilar, who stated that "nobody from the company turned over the [Xoe Chung] profile until on or around March 2022 by subpoena." (ECF No. 93, at 2.) Additionally, while the Government asserts that the Xoe Chung profile was voluntarily disclosed to a Postal Inspector via email, Berkley contends that the Government "has failed to disclose the specific email exchange [showing] OCW handing over the profile [] voluntarily." (ECF No. 109, at 1.) In his earlier Addendum to Motion to Compel Discovery, Berkley asserted that "the Government has turned over incomplete records of emails to and from representatives of [OCW] which clearly contradic[ts] [its] stance of … receiving the [Xoe Chung] profile from a private party." (ECF No. 88, at 1-2.)

Berkley characterizes his recorded conversations with OCW representatives alongside the Government's inability to provide a specific email showing the third-party disclosure as a "specific reason to believe that there are in fact []no[] emails demonstrating []third party disclosure[] which would . . . prove Government misconduct but would also be in direct violation of the Court's discovery order, which in turn would be a direct violation of the defendant's Constitutional Rights in accord with the Due Process Protections Act." (ECF No. 109.) Berkley

2

contends that the "Government's explanation is in direct bad faith," and that he "is being prejudiced . . . by the Government [who is] denying due process and most importantly preventing the defense from correctly and effectively presenting the proper argument based on the accurate facts." (ECF No. 93, at 2–3.)

In response, the United States contends that Berkley's "allegations are factually incorrect." (ECF No. 103, at 1.) It asserts that an OCW employee voluntary provided the Xoe Chung profile. Specifically, the United States says that,

> On or about July 27, 2020, a Postal Inspector emailed OCW's online support department, introducing himself as a Postal Inspector and explaining that he was conducting an investigation into a check fraud scheme, and asked whether OCW had any registered memberships for D.H. or L.P. An OCW employee responded on the same day, providing the Inspector with the OCW profiles of D.H., L.P., and a third account—a profile in the name of a "Xoe Chung"—that the OCW employee considered potentially associated with the D.H. profile because four of the bank accounts stored within the D.H. profile were among the bank accounts stored within the Xoe Chung profile.

(ECF No. 103, at 3–4.) The Government further states that it has previously provided Berkley *all* emails exchanged between the United States Postal Inspector assigned to the case and representatives of OCW. The United States avers that "[b]ecause the United States has *not* misrepresented the nature and timing of its acquisition of the Xoe Chung OCW records, the United States has not acted in bad faith or prejudiced the defendant's ability to present a defense or raise pre-trial motions[, and therefore,] there is no legal basis for dismissal of the Indictment or sanctions" (ECF No. 103, at 5.) The United States also submits that presenting a response to what could be construed as a suppression motion by Berkley "would be premature at this point, because (1) [Berkley's] motion does not specify the legal basis . . . on which he plans to rely to seek suppression of the [OCW records;] and (2) [Berkley's M]otion is likewise devoid of any

3

explanation as to how the government's acquisition of the OCW records . . . could form a cognizable basis for such a suppression motion." (ECF No. 103, at 6.)

## II. The Government's Request for an Evidentiary Hearing

The Government submits that because the parties are in "clear dispute as to relevant facts," an evidentiary hearing should be held to create a firm factual record that will enable Berkley to assess what motions may be appropriate regarding the OCW records. (ECF No. 103, at 1.)

Berkley, however, contends that the "Government is trying to complicate a matter which can be solved easily with disclosure of the actual email [because i]f the government is telling the Court that a profile was emailed, then it will 100% certainly be a record of it." (ECF No. 109.) The Court notes that, in briefing on the Addendum to Motion to Compel, Berkley requests the Court to compel the Government to disclose the "exact" email correspondence demonstrating the handing over of the profile or for the Court to conduct an in court, in camera inspection of the emails that the Government allegedly has stated that they have disclosed." (ECF No. 108, at 3.)

On this record, the Court cannot find that the United States did or did not produce all necessary documents. As it is, both parties report that the evidence they hold supports a finding in their favor. This constitutes a clear factual dispute between the parties. While the issue of whether the Government received the profile voluntarily or through subpoena does not go to the merits of Berkley's case, and instead raises concerns about possible discovery mismanagement or other issues, the Court deems it worth pursuing. While it is unusual for a defendant to seek a discovery hearing at such a preliminary stage, because Berkley contends that he has evidence contradicting the Government's representations, and because the United States seeks a hearing,

4

the Court will schedule an evidentiary hearing to crystallize the facts that Berkley challenges. The Court will allow and require Berkley to produce any recordings of his conversations with the OCW employees for use during that hearing.

In Order to maximize judicial resources, the Court will not hold an evidentiary hearing without the recorded conversations and necessary government witnesses prepared to present competent evidence. The Court reminds the parties, especially Berkley who proceeds *pro se*, that any such hearing will have a strictly limited scope of inquiry and will not be used to explore unrelated discovery grievances. Berkley is reminded that the hearing required to establish the record he seeks will necessarily have the effect of delaying trial on the merits.

### III. Conclusion

For the foregoing reasons, the Court will deny, without prejudice, the Motion to Dismiss Indictment and/or Issue Sanctions and the Addendum to Motion to Compel Discovery as to Online Check Writer emails. (ECF Nos. 93, 88.) The Court will schedule an evidentiary hearing during which a record can be established on which either party can rely for proper follow up motions.

During the June 2, 2023, the Court will hear from the parties as to the most expeditious date on which each party can be prepared to present its case.

It is SO ORDERED.

Date: 05/31/23
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

5